# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| **In re:**<br><br>**GUNNING MOTORS, INC.**<br>　　　　　　　　**Debtor** | **Case No. 10-11896-RGM**<br>**Chapter 11** |

## MOTION OF GUNNING MOTORS, INC. FOR ORDER AUTHORIZING IT TO USE CASH COLLATERAL AND TO PROVIDE ADEQUATE PROTECTION TO <u>SECURED LENDERS</u>

Gunning Motors, Inc. (the "Debtor" or "Gunning Motors"), by counsel, respectfully moves, pursuant to 11 U.S.C. ' 361, 363, 503(b), 507 and 105, Federal Rule of Bankruptcy Procedure 4001, and Local Bankruptcy Rule 9013-1, for entry of an order (a) authorizing Gunning Motors to use on an interim basis, the cash collateral of Chrysler Financial America, LLP ("Chrysler Financial"), Dealer Services Corporation ("DSC") and Automotive Finance Corporation ("AFC") (collectively the "Secured Lenders") and to provide Secured Lenders with adequate protection of its interest in cash collateral, and (b) scheduling a final hearing (the "Final Hearing") on Gunning Motors's use of cash collateral. In support of this Motion, Gunning Motors represents as follows:

### <u>Jurisdiciton</u>

    1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

---

_____
Ann E. Schmitt, VSB # 22030
Culbert & Schmitt, PLLC
30C Catoctin Circle, SE
Leesburg, VA 20175
703-737-6377 (telephone)
703-737-6370 (facsimile)
aschmitt@culbert-schmitt.com

'' 157 and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. '' 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. '' 157(b)(2)(A) and 157(b)(2)(M).

3. The statutory and rule predicates for the relief sought in this Motion are sections 361, 363, 503(b), 507, and 105 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 9013-1.

## Procedural History

4. On March 13, 2010, (the "Petition Date"). Gunning Motors filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Gunning Motors is continuing to operate its business and manage its financial affairs as a debtor in possession.

5. On March 13, 2010, Gunning Construction, Inc. ("Construction"), an affiliate of the Debtor, filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Construction is continuing to operate its business and manage its financial affairs as a debtor in possession

6. No trustee, examiner, or committee has been appointed in either case.

## The Debtor's Business and History

7. Debtor began operations in 1989 a Manassas Dodge.  The dealership operated out of property owned by Construction at 9020 Liberia Ave., Manassas, Virginia ("9020 Liberia").  In 2000, the operations expanded with the addition of a Subaru franchise ("Manassas Subaru"), which operates from adjacent property located at

9018 Liberia Ave. ("9018 Liberia")[1]  Gunning Motors also leases from Construction a large service facility located at 8739 and 8784 Commerce Ct. in Manassas ("8739 and 8784 Commerce").

8. Chrysler Financial (or its predecessor entities) was the primary source of funding for Gunning Motors and Construction, providing acquisition and construction funding for the real property and improvements owned by both companies, and "floor plan" financing for Manassas Dodge, and Manassas Subaru.  Gunning Motors and Construction are indebted to Chrysler Financial pursuant to multiple promissory notes which have a total balance of approximately $5,650,715 (the "Chrysler Financial Loans").

9. The Chrysler Financial Loans are secured by first deeds of trust on 9020 Liberia and 8739 and 8784 Commerce.  Pursuant to appraisals dated January 25, 2010, the value of these properties is in excess of $6,700,000.

10. The Chrysler Financial Loans are also secured by a leasehold deed of trust on 9018 Liberia.  Pursuant to an appraisal dated January 25, 2010, the value of these assets is $585,000.

11. The Chrysler Financial Loans are also secured by a first lien on Debtor's—

>   (i) All inventory, including but not limited to all new and used motor vehicles, campers, travel trailers, mobile homes and all automotive parts and accessories, whether now owned or hereinafter acquired, together with all additions and accessions thereto; and
>
>   (ii) All chattel paper, accounts whether or not earned by performance, contract rights, documents, instruments general intangibles, investment

---

[1] The 9018 Liberia property is the subject of a twenty five year ground lease with Robert Rosenthal. After entering into that lease, Gunning Motors build a showroom and repair facility on the site.

3

property, consumer goods, equipment, furniture, machinery, tools, supplies, fixtures and leasehold improvements; and

(iii) All proceeds of property covered by the Chrysler Financial financing statement, including but not limited to insurance proceeds, money, chattel paper, goods, including without limitation motor vehicles received in trade, contract rights, accounts whether or not earned by performance, documents, instruments, general intangibles, claims and tort recoveries relating to the property.

12. Debtor's Dodge franchise was rejected by Chrysler in its Chapter 11 case, *In re Old Carco LLC, (f/k/a Chrysler LLC, case No. 09-50002(AJG)*. (It is somewhat ironic that this rejection came on the twenty (20) year anniversary of Debtor's relationship with Chrysler.) Following that termination, Chrysler Financial immediately ceased all lending under its floor plan financing programs, which provided financing not only the Dodge dealership, but the Subaru dealership. Debtor sought substitute floor plan financing, but the economic climate and credit market was such that it was unable to obtain substitute financing for the purchase of new Subaru vehicles.

13. On or about August 12, 2010, the Debtor entered into an agreement with DSC which provides for floor plan financing for the purchase of previously owned vehicles. Under the terms of the agreement and as set forth in the financing statement filed by DSC on August 18, 2009, DSC has a lien on—

> All Debtor's assets and properties wherever located, including without limitation all equipment of any kind or nature, all vehicles, vehicle parts and inventory now owned or hereinafter acquired, without limitation, purchase money inventory, the purchase of which was financed or floor planned by DSC, all returns, repossessions, exchanges, substitutions, attachments, additions, accessories, replacements and proceeds thereof; all accounts receivable, chattel paper, and general intangibles now owned or hereinafter acquired by Debtor together with proceeds thereof; and all of Debtor's documents, books and records relating to the foregoing.

4

The practice of the parties is for the DSC debt to be paid pro-rata as each vehicle purchased under the DSC floor planning facility is sold (essentially a release price). Debtor is not now, nor has it ever been "out of trust" under this facility, and there is sufficient value in the DSC vehicles to pay the DSC obligation in full. As of the date of this Motion, DSC is owed $51,743.

14. On or about August 12, 2010, the Debtor entered into an agreement with AFC which provided for floor plan financing for the purchase of previously owned vehicles. Under the terms of the agreement and as set forth in the financing statement filed by AFC on August 19, 2009, AFC has a lien on—

> All presently held or hereafter acquired inventory, equipment, accounts, chattel paper, and general intangibles. All additions, accessories, replacements and proceeds of the foregoing.

The practice of the parties is for the AFC debt to be paid pro-rata as each vehicle purchased under the AFC floor planning facility is sold (essentially a release price). Debtor is not now, nor has it ever been, "out of trust" under this facility, and there is sufficient value in the AFC vehicles to pay the AFC obligation in full. As of the date of this Motion, AFC is owed $129,072.75.

**Relief Requested**

15. As set forth above, the Secured Lenders have multiple sources of collateral which secure their liens, some of which constitute cash collateral ("Cash Collateral") under 11 U.S.C.'' 363(a) and (c). It is estimated that the value of the Cash Collateral as of the Petition Date is $5,000.

16. Prior to the filing of this case, Gunning Motors entered into a Letter of Intent for the purchase of the Subaru facility, together with the related Subaru equipment,

parts and other items and Construction entered into a Letter of Intent for the purchase of 9020 Liberia and 8784 Commerce Court. Debtor and Construction have or shortly will file a motion to approve these sales on an expedited basis. During the interim, it is critical that Gunning Motors remain in business to sell out its remaining vehicle inventory and to insure the continuation of the Subaru franchise. Continued business operations are a requirement under the sale contract.

17. Because Gunning Motors must utilize the Cash Collateral to operate, it urgently seeks entry of an order approving its use of Cash Collateral and granting Secured Lenders adequate protection in the form of replacement liens having the same priority and extent as existed prior to the Petition Date. Debtor submits that this proposal provides the Secured Creditors with adequate protection, because in each case the secured lender is adequately secured by other collateral. Moreover, sale of this collateral is imminent and is at full market value.[2]

18. This Motion contemplates, and Gunning Motors requests this Court's authorization for a two step procedure, whereby the Court would:

    a. at the conclusion of an interim hearing on the Motion (the "Interim Hearing") enter an interim order, substantially in the form of the order attached hereto as Exhibit A (the "Interim Order"); and

    b. entry of a final order at a subsequent hearing, after at least 15 days notice to creditors and other parties in interest.

## Applicable Authority

---

[2] The sale price for the Gunning Motors and Gunning Construction assets is $3,240,000 plus an additional amount for parts inventory. Not included in the sale is property located at 8739 Commerce Court, which has an appraised value of $4,850,000. The proposed sale does not include the vehicle inventory which is subject to the liens of DSC and AFC.

19. According to the legislative history of section 361 of the Bankruptcy Code, a finding of adequate protection is "left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of the facts of each case and general equitable principals." H.R. Rep. No. 595, 95th Cong., 1st Sess. 339 (1977), *see* <u>In re O'Connor,</u> 808 F.2d 1393, 1396-97 (10th Cir. 1987). The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See* <u>In re Swedeland Development Group, Inc.</u>, 16 F.3d 55, 564 (3rd Cir. 1994). Generally, the courts have found that where the status of a secured creditor's other interest is being maintained, and cash collateral is being used to meet operating and overhead expenses, a debtor may provide adequate protection for the use of proceeds derived from pre-petition assets by granting a secured creditor a replacement lien on post-petition assets. *See generally,* <u>In re Connor,</u> 808 F. 2d at 1397. For the reasons stated above, the Debtor believes that Secured Lenders is adequately protected as to its interest in Cash Collateral through the granting of post-petition replacement liens.

## **Briefing**

20. Gunning Motors does not believe that this Motion presents any novel issues of law requiring separate briefing. Accordingly, Gunning Motors requests that any requirement under Local Rule 9013(1(G) that it file a separate memorandum of law in support of this Motion be waived.

## **Notice**

21. Gunning Motors is providing notice of this Motion either by overnight delivery service, email, or both, to (i) the Office of the United States Trustee for Region

Four; (ii) counsel for Secured Lenders, or if counsel was not known, the Secured Lenders at the notice address set forth in their Loan Documents, and (iii) the Debtor's twenty largest unsecured creditors. Because of the nature of the relief sought, Gunning Motors respectfully submits that no other or further notice of the relief requested in this Motion need be given.

WHEREFORE, Gunning Motors respectfully requests that the Court (a) enter the Interim Order authorizing the Debtor's use of Cash Collateral on an interim basis through the conclusion of the Final Hearing on the terms set forth herein; (b) enter a Final order authorizing the Debtor's use of Cash Collateral on a final basis on the terms set forth herein; and (c) granting the Debtor such other relief as may be just.

March 17, 2010

*/s/ Ann E. Schmitt*
Ann E. Schmitt, VSB # 22030
Culbert & Schmitt, PLLC
30C Catoctin Circle, SE
Leesburg, VA 20175
Proposed Counsel for Debtor

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served this 17th day of March 2010 on the Office of the United States Trustee, 115 South Union Street, Alexandria, VA 22314 and on the twenty largest unsecured creditors by electronic mail, facsimile or where neither an electronic address or facsimile number is available, by U.S. mail.

*/s/ Ann E. Schmitt*