# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| In re:<br><br>GUNNING MOTORS, INC.<br>                      Debtor | Case No. 10-11896-RGM<br>Chapter 11 |

### DEBTOR'S MOTION FOR ORDER (A) AUTHORIZING SALE OF DEBTOR'S ASSETS FREE AND CLEAR OF ANY CLAIMS, LIENS AND ENCUMBRANCES AND THE ASSIGNMENT OF THE EXISTING LEASE, (B) APPROVING BREAK UP FEE AND (C) APPROVING BIDDING PROCEDURES

Gunning Motors, Inc. (the "Debtor" or "Gunning Motors"), by counsel, respectfully moves, pursuant to 11 U.S.C. '' 330, 331, 363, 365 and 1107 and 1108, Federal Rules of Bankruptcy Procedure 2002, 4001 and 6004, and Local Bankruptcy Rule 9013-1, for entry of an order (i) authorizing the Debtor to sell free and clear of liens, claims and encumbrances substantially all of Debtor's assets and to assign the lease for premises located at 9018 Liberia Avenue, Manassas, VA, subject to the terms and conditions of the Asset Purchase Agreement between the Debtor and the Brown Automotive Group ("Agreement"), a copy of which is attached hereto as *Exhibit* A, and (b) approving the "Breakup Fee" provisions set forth in Article XI of the Agreement, and (c) approving bidding procedures to solicit competing offers. In support of this Motion, the Debtor respectfully represents as follows:

_____
Ann E. Schmitt, VSB # 22030
Culbert & Schmitt, PLLC
30C Catoctin Circle, SE
Leesburg, VA 20175
703-737-6377 (telephone)
703-737-6370 (facsimile)
aschmitt@culbert-schmitt.com

1

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. '' 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. '' 1408 and 1409.

2. This is a core proceeding pursuant to 28 U.S.C. '' 157(b)(2)(M) and 157(b)(2)(N).

3. The statutory and rule predicates for the relief sought in this Motion are sections 363, and 105 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 9013.

**Procedural History**

4. On March 13, 2010, (the "Petition Date"), Gunning Motors filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Gunning Motors is continuing to operate its business and manage its financial affairs as a debtor in possession.

5. On March 13, 2010, Gunning Construction, Inc. ("Construction"), an affiliate of the Debtor, filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, Construction is continuing to operate its business and manage its financial affairs as a debtor in possession

6. No trustee, examiner, or committee has been appointed in either case.

## The Debtor's Business and History

7. Debtor began operations in 1989 a Manassas Dodge. The dealership operated out of property owned by Construction at 9020 Liberia Ave., Manassas, Virginia. In 2000, the operations expanded with the addition of a Subaru franchise, which operates from adjacent property located at 9018 Liberia Ave., Manassas, VA. ("9018 Liberia"). Gunning Motors also leases from Construction a large service facility located at 8739 and 8784 Commerce Ct. in Manassas ("8739 and 8784 Commerce").

8. Gunning Motors is the tenant under a twenty five year ground lease with Robert Rosenthal for 9018 Liberia ("Existing Lease"). After entering into the Existing Lease, Debtor constructed a "signature Subaru facility" on the property.

9. Chrysler Financial (or its predecessor entities) was the primary source of funding for Gunning Motors and Construction, providing acquisition and construction funding for the real property and improvements owned by both companies (including the Subaru facility), and "floor plan" financing for Manassas Dodge, and Manassas Subaru. Gunning Motors and Construction are indebted to Chrysler Financial pursuant to multiple promissory notes which have a total balance of approximately $5,650,715 (the "Chrysler Financial Loans").

10. Debtor's Dodge franchise was rejected by Chrysler in its Chapter 11 case, *In re Old Carco LLC, (f/k/a Chrysler LLC, case No. 09-50002(AJG).* This rejection came on the twenty (20) year anniversary of Debtor's relationship with Chrysler. Following that termination, Chrysler Financial immediately ceased all lending under its floor plan financing programs, which provided financing not only the Dodge dealership, but the

Subaru dealership. Debtor sought substitute floor plan financing, but the economic climate and credit markets were such that it was unable to obtain substitute financing for the purchase of new Subaru vehicles.

11. In the summer of 2009, Gunning Motors obtained floor planning financing which allowed it to purchase and sell used vehicles. Since that time, it has operated a Subaru service center together with the sale of the used vehicles.

12. Ultimately, these reduced operations were insufficient, and did not produce enough revenue to fund operations and make debt service on the various loan obligations. Accordingly, the Debtor, through its principal began the process of finding a buyer for the Gunning Motors operating assets, as well as the real property owned by Construction. These efforts were complicated by the need to (i) assign the Existing Lease, (ii) transfer of the Subaru dealership agreement (or provide for a new agreement between the buyer and Subaru of America), and (iii) obtain a release of the Chrysler Financial lien. The Agreement which is the subject of this motion is the result of months of marketing efforts, and Debtor believes it offers the best recovery to creditors.

### **Brown Automotive Group Sale**

13. Debtor and Brown Automotive Group ("Brown") have entered into the Agreement pursuant to which Brown will purchase substantially all of the assets of the Gunning Motors estate and take an assignment of the Existing Lease.[1]

14. The Agreement includes the following provision:

    a) <u>Purchased Assets and Consideration</u>. The assets being purchased ("Purchased Assets") and allocation of the purchase price is as follows:

---

[1] The only assets not included in the sale are (i) Vehicles, (ii) Debtor's claim in the *In re Old Carco LLC, (f/k/a Chrysler LLC, case No. 09-50002(AJG)* (iii) accounts receivable and case, and (iv) possible causes of action pursuant to chapter 5 of the Bankruptcy Code.

(i) $485,000: Assignment of the Existing Lease and the improvements thereon.

(ii) Parts and Accessories: Buyer will purchase all returnable Parts and Accessories at the current dealer cost for such part and accessory. Buyer is not be required to purchase non-returnable or obsolete parts;

(iii) Special Tools: Buyer will purchase all special tools at an amount equal to the Subaru purchase price of such tools less the lower of 50% of their purchase price or their depreciated value at Closing (based on a straight line depreciation);

(iv) Furniture and Fixtures: Furniture, fixtures shall be purchased at their depreciated value;

(v) Goodwill and other operating assets such as customer lists, manuals, point of sale materials, merchandising materials and other soft assets such as phone number, electronic access to customer service records and web site addresses: $600,000

b) <u>Assignment of Existing Lease</u>: The Existing Lease will be assigned to Brown.

c) <u>Closing Date</u>: May 15, 2010 unless the parties agree in writing to extend the date by an additional 30 days.

d) <u>Broker Fee</u>: Debtor has engaged Webber Ghaban & Associates as a broker in this transaction. The Agreement provides for payment of a sale commission of 2% of the sale price, to be paid from the sale proceeds.

e) <u>Contingencies</u>: The obligations of the buyer to consummate the transaction are contingent, among other things, upon Buyer's obtaining financing and a satisfactory inspection of the leased premises. These contingencies expire on May 1, 2010. In addition, closing is contingent upon Buyer's receiving an acceptable franchise agreement from Subaru of America.

15. Brown and John Gunning, Debtor's president and sole shareholder, have had preliminary discussions regarding possible employment of Mr. Gunning by Brown. No specifics have been discussed, and the proposed sale is not contingent on Mr. Gunning's employment.

**Liens and Encumbrances**

16. <u>Chrysler Financial Services Americas, LLC</u>: The Chrysler Financial Loans are secured by first deeds of trust on 9020 Liberia and a leasehold deed of trust on 9018 Liberia. The Chrysler Financial Loans are also secured by a first lien on Debtor's—

> (i) All inventory, including but not limited to all new and used motor vehicles, campers, travel trailers, mobile homes and all automotive parts and accessories, whether now owned or hereinafter acquired, together with all additions and accessions thereto; and
>
> (ii) All chattel paper, accounts whether or not earned by performance, contract rights, documents, instruments general intangibles, investment property, consumer goods, equipment, furniture, machinery, tools, supplies, fixtures and leasehold improvements; and
>
> (iii) All proceeds of property covered by the Chrysler Financial financing statement, including but not limited to insurance proceeds, money, chattel paper, goods, including without limitation motor vehicles received in trade, contract rights, accounts whether or not earned by performance, documents, instruments, general intangibles, claims and tort recoveries relating to the property.

17. <u>Dealer Services Corporation ("DSC")</u>. On or about August 12, 2010, the Debtor entered into an agreement with DSC which provides for floor plan financing for the purchase of previously owned vehicles. Under the terms of the agreement and as set forth in the financing statement filed by DSC on August 18, 2009, DSC has a lien on—

> All Debtor's assets and properties wherever located, including without limitation all equipment of any kind or nature, all vehicles, vehicle parts and inventory now owned or hereinafter acquired, without limitation, purchase money inventory, the purchase of which was financed or floor planned by DSC, all returns, repossessions, exchanges, substitutions, attachments, additions, accessories, replacements and proceeds thereof; all accounts receivable, chattel paper, and general intangibles now owned or hereinafter acquired by Debtor together with

proceeds thereof; and all of Debtor's documents, books and records relating to the foregoing.

The practice of the parties is for the DSC debt to be paid pro-rata as each vehicle purchased under the DSC floor planning facility is sold (essentially a release price). As of the Petition Date, DSC was owed $51,743. It is expected that the DSC vehicles will be sold by the time this sale is consummated, and this debt paid in full.

18. <u>Automotive Finance Corporation ("AFC").</u> On or about August 12, 2010, the Debtor entered into an agreement with AFC which provided for floor plan financing for the purchase of previously owned vehicles. Under the terms of the agreement and as set forth in the financing statement filed by AFC on August 19, 2009, AFC has a lien on—

> All presently held or hereafter acquired inventory, equipment, accounts, chattel paper, and general intangibles. All additions, accessories, replacements and proceeds of the foregoing.

The practice of the parties is for the AFC debt to be paid pro-rata as each vehicle purchased under the AFC floor planning facility is sold (essentially a release price). As of the Petition Date, AFC was owed $129,072.75. It is expected that the AFC vehicles will be sold by the time this sale is consummated, and this debt paid in full.

19. <u>Personal Property Taxes owed to the City of Manassas, Virginia.</u> As of April 15, 2010, personal property taxes in the approximate amount of $6,700 will be due to the City of Manassas. These taxes relate to property which is to be sold under the Agreement. This amount is a statutory lien against the personal property.

20. In addition to the foregoing there are arrearages due on the Lease, which are $46,944.53 as of the date of this Motion, including $19,495.05 for real estate taxes. Additional amounts are expected to accrue through the closing date.

## Relief Requested

### Bidding Procedures

21. By this Motion, the Debtor respectfully requests entry of an order authorizing and approving the sale of the Purchased Assets and the assignment of the Existing Lease pursuant to the Agreement. However, the Debtor has executed the Agreement subject to any higher and better offers that may be received by the Debtor.

22. Accordingly, the Debtor proposes the following bidding procedures:

(a) Any party wishing to make an offer ("Competing Offer") for the Purchased Assets shall do so in writing and shall submit the Competing Offer to counsel for the Debtor no later than close of business on April 20, 2010, at the address below, with a copy to be sent to the Office of the United States Trustee, 115 South Union Street, Alexandria, VA 22314;

(b) the Competing Offer shall be for all or substantially all of the Purchased Assets and in a form which is substantially the same as Exhibit A;

(c) by April 23, 2010, the alternative bidder must tender a $50,000 deposit to Culbert & Schmitt, PLLC, counsel for the Debtor, which will be held in escrow pending the outcome of the Sale Hearing;

(d) the Purchase Price must be at least equal to the total Purchase Price under the Agreement, plus the 2% Break Up Fee, plus $10,000. ((a-d) above are hereinafter referred to as the "Bidding Procedures").

**In the event there is a Competing Offer, the Court will hold an auction of the Purchased Assets at the April 27, 2010 Sale Hearing (or such other hearing date as the court may set.)**

23. Upon 48 hours notice, and during normal business hours, the Debtor will make the Purchased Assets available for inspection.

**Breakup Fee**

24. Article XI of the Agreement provides as follows:

> Seller acknowledges that (a) the Buyer has made and will make a substantial investment in time and will incur substantial out-of-pocket expenses in connection with the negotiation and execution of this Agreement, its due diligence with respect to the Purchased Assets and its efforts to consummate the transaction contemplated herein, and (b) that the Purchaser's efforts have substantially benefited the Seller and will benefit the bankruptcy estate of the Seller through the submission of the offer reflected in this Agreement, which will serve as a minimum bid on which other potentially interested bidders can rely. Therefore, as compensation for entering into this Agreement, taking action to consummate the transaction contemplated hereby, and incurring costs and expenses related thereto and other losses and damages, including foregoing opportunities, the Seller agrees as follows, subject however, to the Bankruptcy Court approval of this provision of the Agreement, to pay the Buyer upon closing of an alternative transaction for the sale, transfer or conveyance of all or a portion of the Purchased Assets, the Existing Lease or the Subaru Dealer to any third party an amount equal to 2% of the price paid by such third party or parties (the "Break-Up Fee"). The provisions of this section shall survive termination of this Agreement. In connection with the filing of the Sale Motion, Seller shall seek prior approval of the provisions of Article XI.

25. Brown has negotiated with the Debtor in good faith and has expended and will continue to expend significant resources in conducting its due diligence and in pursuing a new agreement with Subaru. Absent the bankruptcy filing, it would have assurance that these expenditures and efforts would not be wasted, and that subject to the satisfaction of the conditions of closing set forth in the Agreement, it would acquire the Purchased Assets. With the bankruptcy filing, Debtor has a fiduciary duty to maximize the value of its assets, requiring it to "open up" the bidding in a way which would not be possible or appropriate but for the bankruptcy.

26. The Breakup Fee, equal to 2% of the ultimate purchase price should Brown not be the successful bidder, is designed to compensate Brown its time and expense incurred as a "stalking horse". Debtor submits that this amount is reasonable compensation for Brown's estimated costs.

27. Debtor asks that the Court approve Article XI of the Agreement in connection with the establishment of Bidding Procedures, and prior to the hearing on the sale of the Assets.

## Applicable Authorities

28. Section 363(b)(1) of the Bankruptcy Code provides that debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Approval of the sale is appropriate if the court finds that the transaction has a sound business purpose or represents a reasonable business judgment on the part of the debtor. *In re WBQ Partnership,* 189 B.R. 97, 102 (Bankr. E.D. Va 1995); *In re Mallory Company, Inc.,* 214 B.R. 834, 836-37 (Bankr. E.D. Va. 1997). *See, In re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2D 143 (3RD Cir. 1986).

29. The debtor has the burden of proving the following four elements: (a) a sound business reason or emergency which justifies a pre-confirmation sale; (b) the sale has been proposed in good faith; (c) adequate and reasonable notice of the sale has been provided to interested parties; and (d) the purchase price is fair and reasonable. *In re WBQ Partnership,* 189 B.R. at 102.

    (a) <u>A sound business reason or emergency which justifies a pre-confirmation sale</u>: As of the Petition Date, Debtor had approximately $5,000 in cash, and fewer than thirty (30) vehicles on the lot. Neither of its floor plan lenders is willing to lend additional monies to purchase new inventory, and as a practical matter, Debtor will not be able to continue operations more than a

few weeks. Continued operations are required under the Agreement, and this would not be possible given the time constraints of preparing a plan and disclosure statement and obtaining the necessary approvals;

(b) <u>The sale has been proposed in good faith</u>. The sale is an arms length transaction, reached after months of marketing of the Purchased Assets. Moreover, the proposed bidding procedures provide a mechanism for a higher and better offer;

(c) <u>Adequate and reasonable notice of the sale has been provided to interested parties:</u> Debtor has or will provide notice of the proposed sale to all creditors and to parties who have, over the last year, expressed an interest in purchasing the assets;

(d) <u>The purchase price is fair and reasonable:</u> The purchase price is consistent with appraisals obtained by the Debtor in January 2010. Moreover, the proposed bidding procedures provide a mechanism for a higher and better offer.

## Assignment of the Existing Lease

30. By this Motion, Debtor also seeks approval pursuant to 11 U.S.C. ' 365, of the assignment of the Existing Lease to Brown, or other successful bidder at the Sale Hearing. All arrearages due on the Existing Lease will be paid from the sale proceeds.

31. Brown if one of the largest automotive dealers in the Washington Metropolitan Area whose financial viability will provide Lessor with adequate protection as required by section 365 of the Bankruptcy Code.

## Briefing

32. Gunning Motors does not believe that this Motion presents any novel issues of law requiring separate briefing. Accordingly, Gunning Motors requests that any requirement under Local Rule 9013(1(G) that it file a separate memorandum of law in support of this Motion be waived.

## Notice

33. Gunning Motors is providing notice of this Motion to (i) the Office of the United States Trustee for Region Four; (ii) counsel for Secured Lenders, or if counsel was not known, the Secured Lenders at the notice address set forth in their Loan Documents, (iii) all parties who have filed a notice of appearance, and (iv) all parties on the Court's mailing matrix, a copy of which is attached hereto. In addition, Debtor will mail a copy of this motion and notice to all parties who have expressed an interest in purchasing the Gunning Motors assets. Gunning Motors respectfully submits that no other or further notice of the relief requested in this Motion need be given.

WHEREFORE, Gunning Motors respectfully requests that the Court enter an order (i) approving the bidding procedures set forth in Exhibit B; (ii) approving the Breakup Fee, (iii) approving the sale of the Purchased Assets to Brown and the assignment of the Existing Lease as set forth in the Agreement, and (iv) granting the Debtor such other relief as may be just.

*/s/ Ann E. Schmitt*
Ann E. Schmitt, VSB # 22030
Culbert & Schmitt, PLLC
30C Catoctin Circle, SE
Leesburg, VA 20175
Counsel for Debtor

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served this 1st day of April, 2010 on all parties on the attached mailing matrix.

*/s/ Ann E. Schmitt*